GARDNER vs. THE STATE OF GEORGIA.

1. Overruling a motion in arrest of judgment based upon the ground that no indictment was found by a grand jury, but the trial was had upon a mere accusation, is matter for direct exception, and not cause for a new trial.    As to dispensing with indictment, and substituting accusation, in the city court of Atlanta, see *Darden vs. The State*, 74 *Ga.* 842.

2. On the trial of a man for a single act of adultery with one of his witnesses, letters written by him previous to the act and a conversation, also previous, had with his wife and his witness when he was not present, all tending to show that he, his wife and his witness had, several months before the alleged adulterous act, combined to impute to a certain dentist criminal intercourse with the witness and to "blackmail" or extort money from him, were not admissible testimony in behalf of the State to impeach the witness or illustrate her relations to or with the accused, she not having been interrogated as to these matters when under examination so as to lay the foundation for contradicting her and thereby impairing her credit.    The admission of this illegal testimony was highly prejudicial to the accused, as its tendency was to render him odious and infamous in the estimation of his jury.    It had no relevancy whatever to the alleged criminal act for which he was on trial.

3. That after receiving the girl into his house for medical treatment, the accused would not and did not suffer her to return whence she came, and gave a false account of her condition, was relevant and admissible testimony as showing the origin of his opportunity and the *res gestæ* of its continuance.

4. That a mature male of the human species has normal powers of virility is matter of legal presumption until the contrary appears, and the burden of making it appear by evidence satisfactory to the jury is on him who asserts it.

5. The court erred in not granting a new trial on the 6th, 7th and 18th grounds of the motion.

April 18, 1888.

Practice in Supreme Court. Motion in arrest of judgment. Indictment. Accusation. Evidence. *Res gestæ.* Presumptions. New trial. Criminal law. Before Judge VAN EPPS. City court of Atlanta. September term, 1887.

In this case and in the preceding one, the evidence of Washington Cobb, on which the convictions mainly rested, was the same. He testified that, about December 22, 1886, he saw, through a window, Dr. Gardner and Mary Hunt in her room at his house upon a bed together, her clothes up and her person exposed, and he lying on top of her with his pantaloons down; and that they were having sexual intercourse. Numerous witnesses were introduced by both sides to impeach and sustain Cobb; and Mary Hunt as a witness, and the defendant in his statement, both denied the occurrence of the transaction related. Carter testified that Mary Hunt lived at his home four years previously, when he carried her to Dr. Gardner for medical treatment, and often afterwards went to inquire as to her condition; that Dr. Gardner said she was very sick and must not be moved; that in about a month, becoming impatient, witness went to the rear of Gardner's house and saw the girl romping and playing in the back yard, and on demanding her release by Gardner, it was refused, Gardner stating that she was pregnant, and threatening to give Carter trouble if he did not pay a sum of money. Carter denied a statement made by her in her testimony, that he once forcibly had sexual intercourse with her.

In his statement the defendant claimed to have long since lost the power of having sexual intercourse. There was no evidence as to this point. After verdict of guilty, he moved for a new trial on the following among other grounds:

(6), (7) The court erred in admitting in evidence, over objection, the letters written by defendant in reference to his charge against Dr. Smith of improper intercourse with Mary Hunt. The facts as to these grounds are stated in the decision.

(8) The court erred in allowing the evidence of Carter; the same being irrelevant and tending to put the character of the defendant in issue.

(15) The court erred in charging thus: "If you believe from the evidence, taken in connection with the defendant's statement, that the defendant at the time mentioned in the evidence was physically incapable of committing the act of sexual intercourse with a female, you ought to acquit him. The burden, however, of establishing this defence rests on the defendant. The law presumes sanity both as to mental and bodily functions; and one who alleges the destruction or loss of any physical organ or organic function, must establish it by evidence satisfactory to the jury."—Assigned as error in failing to give the benefit of reasonable doubt to the defendant, although he may not have affirmatively established his incapacity to have sexual intercourse.

(18) The court erred in admitting the testimony of Dr. Smith in connection with the letters sent by defendant; these letters and this testimony being irrelevant and tending to prejudice the defendant's cause in the eyes of the jury.

The motion was overruled, and defendant excepted.

The above statement will be taken in connection with the facts set forth in the decision.

ARNOLD & ARNOLD, GARTRELL & LADSON and L. W. THOMAS, for plaintiff in error.

H. C. GLENN, solicitor city court, for the State.

BLECKLEY, Chief Justice.

1. Gardner was tried for the correlative side of the act just considered in the case of *Hunt vs. The State.* He also was found guilty. He made a motion in arrest of judgment, on the ground that there was no indictment found by the grand jury, that the case rested on an accusation in the city court of Atlanta, that the verdict was a nullity, and that he could not be punished upon mere accusation. The bill of exceptions makes no allusion to the motion in arrest of judgment; if the judge denied it, the denial is unexcepted to in the bill of exceptions; but the denial of the motion in arrest is made one of the grounds of the motion for a new trial. Of course, the refusal to arrest a judgment because there is no indictment, is not ground for the grant of a new trial. Why it was brought into the motion we do not know. We can make no authoritative ruling upon it, but if we could, the question would be found to be settled against the point in *Darden vs. The State,* 74 *Ga.* 842. The identical question was decided there with reference to bastardy; and it would seem that adultery would be as subject to trial on accusation as bastardy. They are both misdemeanors, and the act organizing the city court of Atlanta provides expressly for this mode of prosecution.

2. In the course of the trial, two letters were offered in evidence by the State, one written and signed by Dr. Gardner, and the other written by him, but signed in the name of his wife. These letters bear date, one in September, and the other in October, 1886, some months before this act of adultery, as dated by the witness, was committed. In connection with these letters, the testimony of Dr. Smith, a dentist, was admitted by the court, which was to the effect that he, as a dentist, had, during the summer of 1886, and before these let-

ters were written, done some dentist's work for this girl, at the instance of Dr. Gardner; and that the girl had afterwards come to him in company with Mrs. Gardner, and a conversation took place about a charge imputing to Dr. Smith fornication or rape,—we do not understand which, but some improper sexual connection with this girl; and then a demand was made for money. The letters related to the same subject-matter, the making of a demand for money as a means of hushing up the complaint. In other words, the testimony of Dr. Smith, and the letters, as colored by that testimony, and as construed by the State's counsel, point to some infamous, vile scheme to blackmail for a fabricated and fictitious wrong to this girl. The evidence was objected to as irrelevant, and the court admitted it for the sole purpose of showing the relationship of the accused to the girl, who was a witness in his behalf, and had already been examined as such when the evidence came in, and as bearing upon the issue of her credibility. To this object the court carefully restricted the evidence in charging the jury. We are unable to see what connection this evidence had with an imputed act of adultery committed several months afterwards by Dr. Gardner at Dr. Gardner's house. The girl, when examined as a witness, was not asked about any of these facts, about anything that Dr. Gardner had done for her or tried to do for her as against Dr. Smith, or about the state of her feelings towards him. She had not been interrogated upon these collateral topics at all; but the State wandered off into them, to do which was, under its construction of their import, calculated to render the defendant odious. If the attempt upon Dr. Smith was an attempt at blackmail, instead of an effort to vindicate innocence and virtue, it made the surroundings of the case repulsive to the jury, to the

court and to the public. What the evidence suggested was so abominable that the court below had to charge the jury in the most elaborate and careful way not to allow it to have any effect upon their minds otherwise than as it bore upon the credit of the girl Mary L. Hunt. We think it should not have come into the case. Nothing of the transaction with Dr. Smith should have come into the case to illustrate a single act of imputed adultery committed some months afterwards; and we do not know what mischief it may have done. It is very likely that blackmail was more in sight of the jury,—and it is more in our sight now in this record, than adultery. We think the court erred in admitting the evidence, and that the error is material enough to entitle this party to be tried over. If he is an innocent man, he has no way of showing his innocence but by showing that the witness, Cobb, does not swear truly against him. Any collateral matter that makes his case or himself or his witness odious to to the jury interferes with his real defence, and his only defence.

3. The evidence of Carter was admissible, we think. In the first place, it is not objected to in the motion for a new trial; it does not appear to have been objected to on any ground whatever. It is stated in the reporter's notes, interpolated in the evidence, that it was objected to, but the motion for a new trial does not so state; neither does the bill of exceptions. But Carter's evidence was proper, because Carter sent the girl to Dr. Gardner's to be treated by him, and he went afterwards and demanded her, and what transpired when he went to demand his girl back is relevant evidence, because it is part of the *res gestæ*, not only of that occurrence, but of Gardner's opportunity; it is proper to show how this girl came to be at Dr. Gardner's and remain there.

Carter's evidence was relevant and proper and ought to have come in, because it lies in the line of investigation ; it leads up to opportunity.

4. The charge of the court as to physical incapacity, we think, was correct, without going over it.   And we have no fault to find with the trial of the case or its result, except in the matter of the admission of this illegal evidence.   But that is so huge a thing that we are obliged to lay hold of it, and to give this man another opportunity to be tried when he can be heard free from the odious stain this evidence throws upon him if construed in the way the State wanted it construed and intended it to be construed.

5. The judgment is reversed because the court erred in not granting a new trial on the 6th, 7th and 18th grounds of the motion.   The head-notes are to be read as a part of this opinion.

Judgment reversed.